## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ELLEN SMOAK** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.  3:25-cv-919** |
| | § | |
| | § | |
| **BIOHEALTH RX, LLC, EDWARD COKE** | § | **JURY DEMANDED** |
| **MANN III, and EDWARD COKE MANN** | § | |
| **IV** | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(B)(1), (2), (3), and/or (5) FED. R. CIV. P.

All claims (except for sexual harassment in Count IV[1]) of Plaintiff's Petition, filed on March 7, 2025, must be dismissed pursuant to Rules 12(b)(1), (2), (3), and/or (5) Fed. R. Civ. P.

The claims arising out of or related to Plaintiff's purported interest in BioHealth must be dismissed due to the presence of a binding and enforceable arbitration clause in the Operating Agreement for BioHealth, which was executed by Plaintiff on or about July 29, 2024, and counter-signed by Edward Coke "Coke" Mann, IV, in his capacity as Managing Member of the entity. In addition, these claims, as alleged, fail due to application of the Texas statute of frauds and/or due to Plaintiff's failure to state a claim upon which relief can be granted as a matter of applicable law.

Further, Plaintiff failed to serve Edward Coke "Bud" Mann, III, as required by Rule 12(b)(5), Fed. R. Civ. P. Rather, Plaintiff's process server appears to have served Coke Mann *twice* and never achieved service of process on Bud Mann. Accordingly, this Court currently lacks

---

[1] For the reasons in Defendants' separately filed Alternative Motion to Dismiss Pursuant to Rule 12(b)(6), Plaintiff's claim for sexual harassment must also be dismissed.

personal jurisdiction over him, and dismissal is appropriate. In addition, this Court lacks personal jurisdiction over Bud Mann because he does not have the requisite minimum contacts with the State of Texas and he must be dismissed from the action pursuant to Rules 12(b)(2).

## Table of Contents

I.    PROCEDURAL BACKGROUND ......................................................................... 7

II.   ARGUMENT AND AUTHORITIES ................................................................. 8

  A.   PLAINTIFF HAS NOT SERVED DEFENDANT BUD MANN WITH PROCESS, AND THIS COURT LACKS PERSONAL JURISDICTION OVER BUD MANN........................... 8

    1.   Plaintiff did not serve Bud Mann with process, as required under Fed. R. Civ. P. (b)(5). 8

    2.   This Court also lacks personal jurisdiction over Bud Mann because he lacks the requisite "minimum contacts" with the State of Texas........................................................ 10

  B.   PLAINTIFF'S CLAIMS ARISING OUT OF OR RELATED TO HER INTEREST IN BIOHEALTH ARE SUBJECT TO MANDATORY ARBITRATION. .................................. 14

    1.   Legal Standard ............................................................................................. 14

    2.   Plaintiff executed BioHealth's Operating Agreement and agreed to its binding arbitration provision.............................................................................................. 17

    3.   The Operating Agreement Contains a Valid and Enforceable Arbitration Clause....... 19

    4.   The dispute in question is within the scope of the arbitration agreement.................... 23

III.   CONCLUSION ............................................................................................. 26

## Table of Authorities

### Cases

*3D/Int'l, Inc. v. Romano*, 811 F. App'x 244, 248 (5th Cir. 2020) .................................................. 18

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) .................................................. 22

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, (1995) ....................................... 13

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) ....................................................... 17

*Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112 (1987)........................................... 11

AT&T Techs. Inc. v. Commc'ns Workers of America, 475 U.S. 643, 650 (1986) ............... 14, 21

*Ballew v. Cannon's Funeral Home & Stewart Servs.*, No. 6:12-cv-3473-HMH-KFM, 2013 WL 1566658, at *2 (D.S.C. Mar. 12, 2013)..................................................................... 19, 20

*Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam) ............................. 18

*Baylor v. Bath*, 1 S.E.2d 139, 140 (S.C. 1938) ............................................................................ 18

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ........................................ 21

*Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) ................................................................ 9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)....................................... 9, 10, 11, 12

*Cardoni v. Prosperity Bank*, 805 F.3d 573, 580–81 (5th Cir. 2015) ............................................ 18

*City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex. App.—Fort Worth 2008, pet. dism'd) ................................................................................................. 18

*Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 nn.5-7 (7th Cir. 2005)......................... 13

*Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009) 14

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)................................................... 14

*Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 801 (Tex. App.—El Paso 2013, no pet.) ........................................................................................................................ 20

*Elkjer v. Sheff & Stone, L.L.P.*, 8 F. Supp. 3d 845, 855-56 (N.D. Tex. 2014) ............................ 23

*Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999)........... 11

*Factor King, LLC v. Dooleymack Constructors of S.C., LLC*, No. 2:17-cv-1845-PMD, 2017 WL 5001289, at *2 (D.S.C. Nov. 2, 2017) ....................................................................... 20

*Friedman v. Wellspring Capital Management, LLC*, No. 19-80071-hb, 2024 WL 205054, at *13 (Bankr. D.S.C. Jan. 18, 2024) (slip copy)......................................................... 19

*Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008)................................. 7

*Gilbert v. Donahoe,* 751 F.3d 303, 306 (5th Cir. 2014) .............................................................. 13

*Glassell Producing Co., Inc. v. Jared Resources, Ltd.*, 422 S.W.3d 68, 78 (Tex. App.—Texarkana 2014, no pet.) ............................................................................................ 22

*Goldberg v. C.B. Richard Ellis, Inc.*, No. 4:11-CV-02237-RBH, 2012 WL 6522741, at *4 (D.S.C. Dec. 14, 2012).................................................................................................. 21

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).................................................................................................................. 11

*Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).................................................... 9

*Hardaway Concrete Co., Inc. v. Hall Contracting Corp.*, 647 S.E.2d 488, 492 (S.C. Ct. App. 2007) ............................................................................................................................. 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984) ............ 10, 12

*Holman St. Baptist Church v. Jefferson*, 317 S.W.3d 540, 548 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)..................................................................................................... 19

*IHS Acquisition No. 131, Inc. v. Iturralde*, 387 S.W.3d 785, 793 (Tex. App.—El Paso 2012, no pet.) .................................................................................................................... 22

*In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) ...................................... 15

*Intern. Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) ......................................... 10

*Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989) ........................................................ 21

*Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018) ......................... 17

*Joyner v. GE Healthcare*, No. 4:08-cv-2563-TLW-TER, 2009 WL 3063040, at *4 (D.S.C. Sept. 18, 2009) .................................................................................................. 19

*Lucchese Boot Company v. Rodriguez*, 473 S.W.3d 373, 381-82 (Tex. App.—El Paso 2015, no pet.) .................................................................................................................... 22

*Lyons v. Starbucks Coffee Co.*, No. 3:19-CV-2457-S-BT, 2020 WL 5732638, at *5 (N.D. Tex. Aug. 24, 2020) (Rutherford, J.) ............................................................................. 7

*Marathon Oil Co. v. A.G. Ruhrgas,* 182 F.3d 291, 295 (5th Cir. 1999) ...................................... 10

*McLernon v. Dynergy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.—Houston [14th Dist.] 2011, no pet.) .................................................................................................................... 19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) .............. 15

*Morton v. Darden Rests., Inc.,* No. 8:17-1865-HMH-KFM, 2018 WL 1531634, at *4 (D.S.C. Mar. 2, 2018) .................................................................................................. 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983) ........................ 14

*Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 627 (5th Cir. 2015) .................................................................................................................... 13

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ............................ 7

*N. Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998) ...................................... 19

*Noble Drilling Servs., Inc. v. Certex USA, Inc.,* 620 F.3d 469, 472 n.3 (5th Cir. 2010) ............. 13

*Noel v. Paul*, No. 3:21-CV-2485-B, 2022 WL 4125216, at *4 (N.D. Tex. Sept. 9, 2022) ........... 17

*OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) .. 14

*Palmetto Constr. Grp., LLC v. Restoration Specialists, LLC*, 856 S.E.2d 150, 153 (S.C. 2021). 15

*People's United Equip. Fin. Corp. v. Hartmann*, 447 Fed. App'x 522, 524 (5th Cir. 2011) ........ 8

*Perry v. Thomas*, 482 U.S. 483, 490 (1987) ............................................................... 14

*Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 687 S.E.2d 714, 718 (S.C. App. Ct. 2009) .................................................................................................................... 20

*Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1992) ...................... 14

*Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996) ...................................... 23

*Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) .................... 9

*Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990) .............................................. 9

*Stage Stores, Inc. v. Eufracio*, No. 13-18-00281-CV, 2019 WL 3484430 (Tex. App.—Corpus Christi–Edinburg Aug. 1, 2019) .................................................................................. 23

*Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985) .............................................. 9

*Suttles v. Thomas Bearden Co.,* 152 S.W.3d 607, 614, (Tex. App.—Houston [1st Dist.] 2004, no pet.) .................................................................................................................... 19

*Thomas v. Santander Consumer USA, Inc.*, No. 0:15-cv-04980-CMC-PJG, 2016 WL 5956279, at *3 (D.S.C. Oct. 14, 2016) .................................................................................. 20

*Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) ...................... 9

*U.S. ex rel. Coastal Roofing Co. v. P. Browne & Assocs., Inc.*, 585 F. Supp. 2d 708, 713 (D.S.C. 2007) ........................................................................................................................... 21

*Ward v. American Airlines, Inc.*, 498 F. Supp. 3d 909, 920 (N.D. Tex. 2020) .......................... 17

*Ward v. Discover Bank*, No. 3:19-cv-02124-SAL, 2020 WL 1922908, at *4 (D.S.C. Apr. 21, 2020) ....................................................................................................................................... 22

*Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985) ...................... 7

*WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989) ................................................................ 9

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ................................... 10

Zabinski v. Bright Acres Associates, 553 S.E.2d 110, 119 (S.C. 2001) ...................................... 22

## **Statutes**

9 U.S.C. § 4 ...................................................................................................................................... 14

9 U.S.C. § 9 ...................................................................................................................................... 14

South Carolina Code §§ 15-48-10, *et seq.* ..................................................................................... 21

## **Rules**

Rule 12(b)(5), Fed. R. Civ. P ........................................................................................................... 8

Rule 12(b)(6), Fed. R. Civ. P ......................................................................................................... 15

Rule 4, Fed. R. Civ. P. ...................................................................................................................... 7

Rules 12(b)(1) and 12(b)(3), Fed. R. Civ. P. ................................................................................ 23

# I.    <u>PROCEDURAL BACKGROUND</u>

On March 5, 2025, Plaintiff filed a civil action in Texas state court, asserting various contract, business tort, and statutory claims against Defendants, and insisting that she can pierce BioHealth's corporate veil to hold Bud Mann personally liable for any damages. (Doc. 6-2.) On April 14, 2025, Defendants timely removed the action to federal court. (Doc. 1)[2]

In the Petition, Plaintiff alleges that during her multi-year professional relationship with Coke Mann, he made various misrepresentations and promises regarding giving Plaintiff an interest in BioHealth, which he allegedly failed to uphold; sexually harassed and then retaliated against Plaintiff when she refused his alleged advances; and that BioHealth and one or more of its indirect members and/or officers, namely Coke Mann's father, Bud Mann, personally owe her more than $56 million for the purported wrongdoing. Defendants stringently deny every one of these allegations and intend to vigorously defend themselves if this motion is not granted. Defendants also anticipate asserting counterclaims if this action proceeds.

The currently-asserted eight civil claims in Plaintiff's Petition include:

(I)    Breach of contract – arising out of an alleged oral contract that Plaintiff would receive a 5% equity stake in BioHealth "and related ventures" (Pet. at ¶¶ 33-36);

(II)    Promissory estoppel – arising out of the alleged verbal promise that Plaintiff would receive a 5% equity interest in BioHealth (Pet. at ¶¶ 37-41);

(III)    Fraudulent inducement – arising out of alleged false verbal representations regarding Plaintiff's future equity interest (Pet. at ¶¶ 42-45);

(IV)    Sexual harassment and retaliation – for purported misconduct beginning as early as 2020 and as late as October 2024 (Pet. at ¶¶ 46-50; *see also id.* at ¶¶ 15-28);

(V)    Intentional infliction of emotional distress – arising out of the alleged sexual harassment and retaliation (Pet. at ¶¶ 51-53);

---

[2] On April 17, 2025, Defendants filed a motion for extension of time to file a responsive pleading, (Doc. 9), which was granted by the Court on April 21, 2025. (Doc. 10.)

(VI) Tortious interference with business relations – alleged to have occurred through Defendants' purported "misrepresent[ations]" and "exclu[sion] … from business operations" (Pet. at ¶¶ 54-57); and

(VII) Trade secret misappropriation (Pet. at ¶¶ 58-61).

Plaintiff also purports to state a claim for "alter ego and piercing the corporate veil," (Count VIII), which, under Texas law is a remedy, not an independent claim.[3]

Plaintiff has named Coke Mann and Bud Mann, as individuals, yet it is clear from the face of the Petition that she names them as "principals" of BioHealth,[4] as the alleged wrongdoing by these individuals appears to have been within the course and scope of their respective ownership and/or managerial-level positions with BioHealth.

## II.    ARGUMENT AND AUTHORITIES

### A.  PLAINTIFF HAS NOT SERVED DEFENDANT BUD MANN WITH PROCESS, AND THIS COURT LACKS PERSONAL JURISDICTION OVER BUD MANN

#### 1.  Plaintiff did not serve Bud Mann with process, as required under Fed. R. Civ. P. (b)(5).

As of the date of this filing, Bud Mann has not been served with the summons and complaint, as required by Rule 4, Fed. R. Civ. P. "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). For service to be effective, a plaintiff is expected to comply with the mandates of Federal Rule of Civil Procedure 4. Without proper service of process, the court lacks personal jurisdiction over a defendant. *Id.* A motion brought pursuant to Rule 12(b)(5), Fed. R. Civ. P., challenges the mode of delivery or the

---

[3] *See* Alternative Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P.

[4] Doc. 6-2, Pet. At ¶ 1.

lack of delivery of the summons and complaint. *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x 688, 691 n.3 (5th Cir. 2008).

In the instant case, Bud Mann has not been served with the summons or complaint at any time to date. When service of process is challenged, the serving party bears the burden of proving its validity. *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985); *see also Lyons v. Starbucks Coffee Co.*, No. 3:19-CV-2457-S-BT, 2020 WL 5732638, at *5 (N.D. Tex. Aug. 24, 2020) (Rutherford, J.) (When service of process is challenged, "the serving party bears the burden of proving its validity or good cause for failure to effect timely service.") (citation omitted), *adopted by* 2020 WL 5710245 (N.D. Tex Sept. 24, 2020) (Scholar, J.). While "[t]he general rule is that [a] signed return of service constitutes prima facie evidence of valid service," this presumption can be "overcome." *People's United Equip. Fin. Corp. v. Hartmann*, 447 Fed. App'x 522, 524 (5th Cir. 2011).

The Court need look no further than the proofs of service filed by Plaintiff in the Texas state court to determine that *only* Coke Mann was served with the summons and complaint, and *not* Bud Mann. Plaintiff's process server claims to have served *both* individual Defendants with the summons and complaint at the *same address* on the *same day* (March 18, 2025) and the *same time* (3:27pm). *See id*. Yet, only Coke Mann resides at the address listed on the notice of process and shown in the photograph attached to the proofs of service.[5] As established in the attached affidavits, Bud Mann was not at Coke Mann's residence on March 18, 2025 at 3:27pm, or anytime that day.[6] Bud Mann resides at a different address in Columbia, South Carolina, and has not visited Coke Mann's residence for some time.[7]

---

[5] *See* Affidavit of Coke Mann, **Exhibit 1** at ¶ 1.

[6] *See* Affidavit of Bud Mann, **Exhibit 2** at ¶ 28.

[7] *See id.* at ¶ 28.

Moreover, the proofs of service as to both Coke Mann and Bud Mann state *the same description* of the person served. (*Compare* **Exh. 1** *with* **Exh. 2** ("White Male, est. age 45-54, glasses: N, Gray hair, 120 lbs to 140 lbs, 5'3" to 5'6".").) This description appears to only match the appearance of Coke Mann, not his father, Bud Mann, who is more than two decades his senior.

In short, Plaintiff cannot reasonably rely on the proofs of service filed with the Texas state court to prove proper service of process on Bud Mann. Rather, the process server claims to have served *both* Coke Mann and Bud Mann on March 18, 2025, but he appears to have only served Coke Mann. Bud Mann has not been served as required by Rule 4, Fed. R. Civ. P., and therefore Bud Mann should be dismissed from the action pursuant to Rule 12(b)(5), Fed. R. Civ. P. as the Court does not currently have jurisdiction over him.

### 2. This Court also lacks personal jurisdiction over Bud Mann because he lacks the requisite "minimum contacts" with the State of Texas.

#### a. Legal Standard for Rule 12(b)(2), Fed. R. Civ. P. Motion

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.,* 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *Intern. Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).

The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart,* 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and

conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (citing *Intern. Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King,* 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to

11

"general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas,* 182 F.3d 291, 295 (5th Cir. 1999).

Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n. 9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112 (1987).

As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Enviro Petroleum, Inc. v. Kondur Petroleum,* 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King,* 471 U.S. at 477). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex. 1991)).

### b. Plaintiff has not alleged facts to establish personal jurisdiction over Bud Mann.

The Petition is devoid of *any* jurisdictional allegations related to Bud Mann.[8] Rather, *all* the jurisdictional allegations are related to Coke Mann and BioHealth. *See id.* The allegations related to Bud Mann are minimal, and acknowledge he "is an individual residing in South Carolina and may be served [in] . . . Columbia, South Carolina[.]"[9] The Court may accept these uncontroverted jurisdictional allegations as true. Yet, no further allegation in the Petition provides a foundation for the establishment of personal jurisdiction over Bud Mann based on general contacts or specific contacts related to Plaintiff's claims in this case and the alleged wrongdoing.

As it relates to the substantive claims, Plaintiff's jurisdictional allegations are further lacking. Plaintiff claims Bud Mann has "taken direct control over BioHealth RX, directing its operations and making critical financial decisions,"[10] "engaged in efforts to transfer company funds and assets into other entities to evade liability, render the company judgment-proof, and avoid regulatory freezes[.]" (*Id.* at ¶ 29). Yet, none of these allegations are adequate to establish that he "purposefully avail[ed] [him]self of the privilege of conducting activities within the [state of Texas], thus invoking the benefits and protections of its laws," *Burger King*, 471 U.S. at 475. Nor do the allegations show specific contacts with Texas that "arise from, or are related to" Plaintiff's causes of action. *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n.8.

As evidenced by the attached affidavit of Bud Mann, minimum contacts cannot be established over him to provide this Court with general or specific personal jurisdiction for

---

[8] Doc. 6-2, Pet. at ¶¶ 7-13.

[9] *Id.* at ¶ 5.

[10] *Id.* at ¶ 30

purposes of this case.[11] Bud Mann has not visited Texas since BioHealth was incorporated.[12] The affidavit makes clear that Bud Mann was merely a passive investor in BioHealth, through his membership interest in Columbia Health, and that his business activities were at all times conducted by him in South Carolina, not Texas.[13] He did not make any business decisions in Texas after BioHealth was incorporated.[14] He did not keep any bank accounts in Texas, whether related to BioHealth or not.[15] He did not hold or attend any meetings in Texas related to BioHealth.[16] He does not maintain business files in Texas.[17]

For these reasons, all claims against Bud Mann should be dismissed from this case pursuant to Rule 12(b)(2) and (5), Fed. R. Civ. P. However, should this Court find that it has personal jurisdiction over Bud Mann, Plaintiff's claims against Bud Mann and the other defendants are subject to mandatory arbitration, as discussed below.

### B. PLAINTIFF'S CLAIMS ARISING OUT OF OR RELATED TO HER INTEREST IN BIOHEALTH ARE SUBJECT TO MANDATORY ARBITRATION.

#### 1. Legal Standard

Courts have dismissed lawsuits based on arbitrations both under Rule 12(b)(1) and Rule 12(b)(3). *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732 nn.5-7 (7th Cir. 2005) (collecting cases); *Noble Drilling Servs., Inc. v. Certex USA, Inc.,* 620 F.3d 469, 472 n.3 (5th Cir. 2010) (observing that Fifth Circuit has not resolved whether Rule 12(b)(1) or Rule 12(b)(3) is the

---

[11] **Exhibit 2**.

[12] *Id.* at ¶¶ 28, 29, 30.

[13] *Id.* at ¶¶ 28, 29, 30.

[14] *Id.* at ¶ 28, 29, 30.

[15] *Id.* at ¶ 28, 29, 30.

[16] *Id.* at ¶ 28, 29, 30.

[17] *Id.* at ¶ 28, 29, 30.

proper vehicle). Specifically, though, the Fifth Circuit has stated that when the parties' dispute is subject to binding arbitration, a district court lacks subject-matter jurisdiction over the dispute under Rule 12(b)(1). *Gilbert v. Donahoe,* 751 F.3d 303, 306 (5th Cir. 2014). Therefore, Defendants move for an order compelling arbitration under the Federal Arbitration Act ("FAA") and dismissal under Rule 12(b)(1) or, in the alternative, dismissal under Rule 12(b)(3). *See Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.,* 625 F. App'x 617, 627 (5th Cir. 2015) (affirming dismissal where defendant "would have been entitled to prevail on a Rule 12(b)(1) or 12(b)(3) motion to dismiss the case because the dispute is covered by the arbitration clause").

Because this dispute involves or arises from interstate sales of pharmaceutical drugs, the case involves interstate commerce[18] and is subject to arbitration under the Federal Arbitration Act ("FAA"); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74, (1995). The FAA embodies the national policy favoring the resolution of disputes through arbitration, as well as the unambiguous congressional intent to hold parties to the terms of their private agreements. Specifically, the FAA mandates that a written agreement to arbitrate disputes, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 9. As stated by the U.S. Supreme Court: the FAA requires the "rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983).

Arbitration agreements must be "rigorously enforce[d]." *Perry v. Thomas*, 482 U.S. 483, 490 (1987). If a contract contains an arbitration clause, there is a presumption of arbitrability, and "any doubts concerning the scope of arbitrable issues should be resolved in favor

---

[18] *See* Doc. 6-2, Pet. at ¶ 4 (alleging BioHealth is a South Carolina LLC, registered to transact business in Texas); *id.* at ¶ 22 (alleging BioHealth "was actively selling into [other] states").

of arbitration." *AT&T Techs. Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650 (1986). "The standard for demonstrating arbitrability is not a high one." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1992). Accordingly, the FAA, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). Rather, where there is a valid and enforceable arbitration agreement, arbitration is mandatory. 9 U.S.C. § 4. Therefore, if this Court finds Plaintiff agreed to arbitrate the claims she asserts in the Petition, arbitration must be ordered.

To decide whether parties should be compelled to arbitrate their dispute, the Fifth Circuit has developed a two-prong inquiry. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (per curiam); *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009). First, the Court must determine "whether the parties agreed to arbitrate their dispute" and two considerations guide the Court in making this decision: (1) whether a valid agreement to arbitrate exists between the parties; and (2) if the court finds that the parties agreed to arbitrate, whether the dispute in question is within the scope of the arbitration agreement. *Id.* If the Court finds that this two-prong inquiry is satisfied, arbitration must be ordered. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

Plaintiff cannot meet her heavy burden to show that her claims should be litigated in court rather than the private arbitration forum she agreed to in signing the Operating Agreement. Rather, this Court should compel Plaintiff to resolve her claims through private and binding arbitration—in keeping with both the Operating Agreement's plain language and the strong federal (and

applicable states')[19] policy favoring arbitration. Because both prongs of the applicable legal test are satisfied here, Defendants' request for arbitration should be granted and this Court should dismiss all of Plaintiff's claims, except for Count IV's sexual harassment claim.[20]

### 2. Plaintiff executed BioHealth's Operating Agreement and agreed to its binding arbitration provision.

At the heart of Plaintiff's Petition is her assertion that she was "promised" or the parties verbally agreed that she would be given a 5% equity interest in BioHealth.[21] Based on these allegations, Plaintiff asserts a claim for breach of oral contract (Count I), promissory estoppel (Count II), and fraudulent inducement (Count III). In these claims, she also asserts Defendants "failed to pay [her] required distributions or provide an accounting of company finances."[22] Plaintiff contends she was excluded from business decisions and refused financial documents and information.[23] She alleges that subsequent to these promises and failures, one or more Defendants "engaged in efforts to transfer company funds and assets into other entities to evade liability, render the company judgment-proof, and avoid regulatory freezes."[24] Defendants deny these allegations.

---

[19] South Carolina and Texas courts favor arbitration and regularly enforce such contractual provisions, including in employment contexts. *See Palmetto Constr. Grp., LLC v. Restoration Specialists, LLC*, 856 S.E.2d 150, 153 (S.C. 2021), *reh'g denied*; *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) ("Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law; there is nothing *per se* unconscionable about an agreement to arbitrate employment disputes and, in fact, Texas law has historically favored agreements to resolve such disputes by arbitration.") (collecting cases).

[20] Which is, itself, subject to dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P. *See* Defendants' Alternative Motion to Dismiss pursuant to Rule 12(b)(6).

[21] Doc. 6-2, Pet. at ¶¶ 15, 17, 33, 37, 42.

[22] *Id*. at ¶ 31.

[23] *Id.* at ¶¶ 19, 22-24, 26-28, 54-64.

[24] *Id.* at ¶ 29

Although Plaintiff's Petition blatantly ignores it,[25] (or mischaracterizes it as an "employment agreement",[26] Plaintiff knows that what she executed on July 29, 2024 was, in fact, BioHealth's Operating Agreement. [27] The Operating Agreement gave Plaintiff a "profit units interest" in BioHealth.[28] The Operating Agreement governs any alleged right Plaintiff claims to operational and financial information from BioHealth,[29] as well as any claim Plaintiff makes to a business decision-making role[30] in BioHealth and distributions from BioHealth.[31] Because all, or nearly all, of Plaintiff's claims stem from or are controlled by the Operating Agreement, Plaintiff's claims must be dismissed pursuant to its binding and enforceable arbitration clause.[32]

Defendant Coke Mann counter-signed the Operating Agreement on or about August 2, 2024.[33] Although Bud Mann did not execute the Operating Agreement, Plaintiff's claims against Bud Mann are governed by the terms of the Operating Agreement because they arise out of or relate to the agreement and Bud Mann's liability, according to Plaintiff's claims, are only due to

---

[25] Before the lawsuit was filed, Defendants' counsel provided Plaintiff's counsel with a copy of the signed Operating Agreement which bears Plaintiff's signature.

[26] Doc. 6-2, Pet. at ¶ 28

[27] **Exhibit 1**, Affidavit of Coke Mann, at Exhibit A.

[28] *Id.* at **Exhibit 1-A** at p. 1 ("Whereas, CH, in its capacity as the initial Member of the LLC and owner of all initially issued Common Units, has offered Profits Interest Units in the LLC to certain valued employees associated with CH and the LLC"); *id.* at ¶ 3.1 (defining membership interests and Profits Interest Units); *id.* at Exhibit A reflecting 50 Profits Interest Units provided to Ellen Smoak).

[29] *Id.* at Section 6 ("Financial Reports and Other Information").

[30] *Id.* at Section 5 ("Management").

[31] *Id.* at Section 4 ("Allocations and Distributions"). *See also* **Exhibit 1-A** at p. 1 ("the undersigned Members and Manager desire to enter into this Agreement to provide for the management of the business and the affairs of the LLC, the allocation of profits and losses, the distribution of cash of the LLC among the Members, the rights, obligations, and interests of the Members to each other and to the LLC, and certain other matters.").

[32] *Id.* at Para. 12.14.

[33] *See* **Exhibit 1-A** at page 20.

her insistence that she can pierce BioHealth's corporate veil to make Bud Mann liable as a member and/or director in an individual capacity. Accordingly, because Plaintiff's claims against Coke Mann and Bud Mann are in their individual capacities as "principals" of BioHealth[34] and the Operating Agreement governs the members interests and rights in the entity, all parties are subject to the Operating Agreement's terms.

### 3.   The Operating Agreement Contains a Valid and Enforceable Arbitration Clause

State contract law governs the Court's first inquiry as to whether the arbitration agreement is valid and enforceable. *Ward v. American Airlines, Inc.*, 498 F. Supp. 3d 909, 920 (N.D. Tex. 2020) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018)). In making the decision as to which state's law to apply, the Court can look to the terms of the Operating Agreement itself,[35] which requires application of South Carolina law.[36]

Courts throughout Texas routinely honor parties' chosen choice of law. "[W]hile they are not unassailable, [the] default position [in Texas] is that choice-of-law provisions should be enforced." *3D/Int'l, Inc. v. Romano*, 811 F. App'x 244, 248 (5th Cir. 2020) (citing *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580–81 (5th Cir. 2015)). Although Defendants are informed and believe that the parties' choice of South Carolina law in the Operating Agreement governs, Defendants posit that under either South Carolina or Texas state law, a proper analysis compels enforcement of the arbitration clause.

---

[34] Doc. 6-2, Pet. at ¶ 1.

[35] *Noel v. Paul*, No. 3:21-CV-2485-B, 2022 WL 4125216, at *4 (N.D. Tex. Sept. 9, 2022).

[36] **Exhibit 1-A** at Para. 12.5 ("This Agreement is to be construed according to the laws of South Carolina.").

In South Carolina, as in Texas,[37] the party seeking to enforce the agreement must prove the existence of an offer, acceptance of the offer, and an exchange of adequate consideration. *Morton v. Darden Rests., Inc.*, No. 8:17-1865-HMH-KFM, 2018 WL 1531634, at *4 (D.S.C. Mar. 2, 2018); *Hardaway Concrete Co., Inc. v. Hall Contracting Corp.*, 647 S.E.2d 488, 492 (S.C. Ct. App. 2007); *see also Baylor v. Bath*, 1 S.E.2d 139, 140 (S.C. 1938) ("As to the existence of the contract itself, generally speaking, the essential elements of any contract are a contractual intent, followed by an actual meeting of the minds of the parties and accompanied by a valid consideration."). Here, all elements necessary to prove a binding contract, under South Carolina and Texas law, are met.

Coke Mann, as managing member of Columbia Health LLC (the sole member of BioHealth) and as managing member of BioHealth, presented Plaintiff (as a potential "Member" receiving Profit Units Interests in BioHealth) with the Operating Agreement.[38] In exchange for Plaintiff's signature and assent to the Operating Agreement's terms,[39] she received 50 Profits Interest Units in BioHealth.[40] These facts establish the existence of an offer by BioHealth and acceptance of the offer by Plaintiff.

---

[37] *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 720 (Tex. App.—Fort Worth 2008, pet. dism'd) ("Parties enter into a binding contract when the following elements exist: an offer; an acceptance in strict compliance with terms of the offer; a meeting of the minds; each party's consent to the terms; and execution of the contract with the intent that it be mutual and binding."). Evidence of mutual intent for written contracts generally consists of the parties' signatures and delivery with the intent to be legally bound. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007) (per curiam).

[38] *See* **Exhibit 1** at ¶ 2.

[39] *See id.* at ¶ 2.

[40] **Exhibit 1-A** at Exhibit A (Membership Interests – noting Smoak to receive 50 Profits Interest Units with $0.00 capital contributed).

Plaintiff's receipt of Profits Interest Units in exchange for agreeing to the terms of the Operating Agreement, including the arbitration provision, constitutes adequate consideration.[41] *See Friedman v. Wellspring Capital Management, LLC*, No. 19-80071-hb, 2024 WL 205054, at *13 (Bankr. D.S.C. Jan. 18, 2024) (slip copy) ("Valuable consideration to support a contract may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.") (quoting *Factor King, LLC v. Dooleymack Constructors of S.C., LLC*, No. 2:17-cv-1845-PMD, 2017 WL 5001289, at *2 (D.S.C. Nov. 2, 2017) (internal quotation marks omitted) (quoting *Plantation A.D., LLC v. Gerald Builders of Conway, Inc.*, 687 S.E.2d 714, 718 (S.C. App. Ct. 2009))).

Plaintiff indicated her acceptance of and assent to the Operating Agreement's terms by executing it on or about July 29, 2024.[42] *See, e.g., Thomas v. Santander Consumer USA, Inc.*, No. 0:15-cv-04980-CMC-PJG, 2016 WL 5956279, at *3 (D.S.C. Oct. 14, 2016) (applying South

---

[41] *McLernon v. Dynergy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Consideration consists of a benefit to the promisor or a detriment to the promisee.") (citing *N. Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1998)); *see also Holman St. Baptist Church v. Jefferson*, 317 S.W.3d 540, 548 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("As long as something of real and legally cognizable value is given in exchange for a promise to pay under a promissory note, the note is supported by adequate consideration") (citing *Suttles v. Thomas Bearden Co.,* 152 S.W.3d 607, 614, (Tex. App.—Houston [1st Dist.] 2004, no pet.)).

Even if Plaintiff alleges the Profits Interest Units are illusory or worthless, such argument would be unavailing because, even absent the exchange of the Profits Interest Units in exchange for Plaintiff's assent to the Operating Agreement, the mutuality of the arbitration clause alone is adequate consideration. Under South Carolina law, as in Texas,[41] mutual promises and obligations are sufficient consideration to support an arbitration agreement. *See Ballew v. Cannon's Funeral Home & Stewart Servs.*, No. 6:12-cv-3473-HMH-KFM, 2013 WL 1566658, at *2 (D.S.C. Mar. 12, 2013) (finding employee and employer's mutual promises to be bound by alternative dispute resolution policy provided adequate consideration, rendering the policy's arbitration provisions enforceable); *Joyner v. GE Healthcare*, No. 4:08-cv-2563-TLW-TER, 2009 WL 3063040, at *4 (D.S.C. Sept. 18, 2009) ("An arbitration agreement is supported by adequate consideration when the parties mutually agree to be bound by the arbitration process.").

[42] **Exhibit 1-A** (Smoak's signature on Exhibit C thereto).

Carolina law and finding employee's signed arbitration acknowledgement confirming she read and agreed to arbitration policy showed offer and acceptance); *Ballew*, 2013 WL 1566658, at *2 (finding that employee's signature on dispute resolution policy constituted valid acceptance). The same principles are true under Texas law.[43]

It cannot be disputed that Plaintiff is a sophisticated party, one who regularly invests in companies like BioHealth.[44] That Plaintiff is a savvy investor with knowledge of the complexity of gaining a profits interest in a start-up company, makes her knowledge and assent to the Operating Agreement's terms unassailable. This is not an unconscionable agreement signed by an unwary or unsophisticated consumer.

In anticipation of Plaintiff's assertion that the Operating Agreement as a whole is invalid in order to avoid enforcement of the arbitration clause within it, her claims must still be dismissed. It is well-settled the question of a contract's validity is for the arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (holding that a "challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *U.S. ex rel. Coastal Roofing Co. v. P. Browne & Assocs., Inc.*, 585 F. Supp. 2d 708, 713 (D.S.C. 2007) ("In the wake of *Buckeye*, courts have ruled that challenges to the entire contract, such as this one, are subject to arbitration."); *Goldberg v. C.B. Richard Ellis, Inc.*, No. 4:11-CV-02237-RBH, 2012 WL 6522741, at *4 (D.S.C. Dec. 14, 2012) ("Numerous other courts, to include the Fourth Circuit, have enforced arbitration clauses where … [a] party attacked only the underlying agreement and

---

[43] *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 801 (Tex. App.—El Paso 2013, no pet.) ("a person who signs a contract is presumed to have read and understood the contract unless he was prevented from doing so by trick or artifice").

[44] *See* Plaintiff's LinkedIn website (available at https://www.linkedin.com/in/contactellen/) (last visited March 24, 2025) (describing herself as operating a "family office," and having experience as an "angel investor" with "venture capital." She is also the founder of "Society of Women Entrepreneurs").

did not specifically point to an error with the arbitration provision itself.") (citing *Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989)).

For these reasons, the Operating Agreement and its arbitration clause are binding and enforceable under South Carolina law (as required by the Operating Agreement itself) or Texas law. The first prong of the test for enforcement of the arbitration clause is definitively met.

### 4.   The dispute in question is within the scope of the arbitration agreement.

The second prong of the Court's inquiry requires consideration of whether the claims at issue fall within the scope of the Operating Agreement's arbitration clause. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Technologies, Inc.*, 475 U.S. at 650 (quotation and citation omitted).

Paragraph 12.14 of the Operating Agreement provides:

Any controversy or claim arising out of or related to this Agreement or the breach thereof, shall be settled, except as may otherwise be provided herein, by binding arbitration in accordance with South Carolina Code §§ 15-48-10, et seq. and the arbitration award may be entered as a final judgment in any court having jurisdiction thereon. …

Although Plaintiff's Petition ignores the existence of the Operating Agreement, her claims necessarily arise out of and relate to the Operating Agreement and/or the purported breach thereof. Under South Carolina law, a clause compelling arbitration for any claim "arising out of or relating to this agreement" extends to cover disputes outside the agreement, if those disputes relate to the subject matter of the agreement. *See Zabinski v. Bright Acres Associates*, 553 S.E.2d 110, 119 (S.C. 2001) ("A broadly-worded arbitration clause applies to disputes that do not arise under the

governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained."). The same is true in Texas.[45]

The arbitration clause at issue expressly notes: "Any dispute as to whether a controversy or claim is subject to arbitration shall be submitted as part of the arbitration proceeding."[46] These types of contractual provisions are enforceable in South Carolina and Texas.[47] *Ward v. Discover Bank*, No. 3:19-cv-02124-SAL, 2020 WL 1922908, at *4 (D.S.C. Apr. 21, 2020) ("[T]he parties agreed that disputes over interpretation of the scope of the arbitration clauses are to be determined by an arbitrator. Accordingly, the Court declines to rule on whether the parties' agreements "purport[] to cover the dispute," ... finding this question properly reserved to arbitration.") (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002)).

The Operating Agreement's arbitration provision covers the scope of most of Plaintiff's claims in the Petition. The causes of action encompassed within the scope of the arbitration clause include those arising out of or related to her alleged 5% equity stake, her right (or lack thereof) to financial and operational information of BioHealth, her right (or lack thereof) to corporate decision-making, and her right (or lack thereof) to distributions (Counts I, II, III, VI, VII, and VIII). The Operating Agreement governs these types of disputes among the parties, and claims

---

[45] *Glassell Producing Co., Inc. v. Jared Resources, Ltd.*, 422 S.W.3d 68, 78 (Tex. App.—Texarkana 2014, no pet.) ("When a contract includes a broad arbitration clause, such as the one in this case, an allegation is within the scope of the arbitration provision if the allegation is covered by, has a significant relationship to, is inextricably enmeshed with, or is factually intertwined with the contract that contains the arbitration agreement.") (collecting cases).

[46] **Exhibit 1-A** at Section 12.14.

[47] *Lucchese Boot Company v. Rodriguez*, 473 S.W.3d 373, 381-82 (Tex. App.—El Paso 2015, no pet.) ("Ordinarily, the trial court retains the power to rule on so-called "gateway" issues such as whether an arbitration agreement exists or is enforceable. ... However, through the use of binding covenants in an agreement, parties may agree to submit even fundamental gateway issues to arbitration.") (citing *IHS Acquisition No. 131, Inc. v. Iturralde,* 387 S.W.3d 785, 793 (Tex. App.—El Paso 2012, no pet.).

arising out of or related to the Operating Agreement are required to be arbitrated. Plaintiff's claims should therefore be dismissed pursuant to Rules 12(b)(1) and 12(b)(3), Fed. R. Civ. P.

The Operating Agreement's arbitration provision also compels arbitration of Plaintiff's Texas-law based statutory retaliation claim (Count IV). Texas state and federal courts have held that statutory claims for harassment and retaliation can be subject to mandatory arbitration. *Elkjer v. Sheef & Stone, L.L.P.*, 8 F. Supp. 3d 845, 855-56 (N.D. Tex. 2014) (dismissing discrimination claims arising under TCHRA and Title VII and requiring arbitration); *see also Stage Stores, Inc. v. Eufracio*, No. 13-18-00281-CV, 2019 WL 3484430 (Tex. App.—Corpus Christi–Edinburg Aug. 1, 2019) (finding arbitration agreement valid and enforceable, and compelling arbitration of TCHRA claims pursuant to it); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996) (finding arbitration clause requiring "any other disputes" to be sufficiently broad enough to encompass the plaintiff's Title VII claims) (citations omitted).

Here, Plaintiff's retaliation claim relates to Coke Mann's alleged exclusion of Plaintiff "from meetings and critical business decisions,"[48] as well as his delegation of "her responsibilities to others" and diminishment of her professional influence.[49] Plaintiff claims that he "stripped [her] of the very opportunities he had once dangled before her to gain her trust and services."[50] She asserts that the retaliation also occurred in the form of reducing her role "to that of a 1099 independent contractor, offering her a grossly inadequate lump-sum payout far below the value of her promised equity stake and contributions."[51] The factual foundation for Plaintiff's retaliation

---

[48] Doc. 6-2, Pet. at ¶ 19.

[49] *Id.*

[50] *Id.*

[51] *Id.* at ¶ 27.

claim arises out of or is related to the parties' performance of the Operating Agreement or the breach thereof and is subject to the binding arbitration clause.

Count I, II, III, IV (as to retaliation), VI, VII, and VIII in the Petition are, for these reasons, subject to binding and enforceable arbitration as required by the Operating Agreement and should be dismissed by this Court.[52]

## III.    <u>CONCLUSION</u>

All claims in Plaintiff's Petition (except for sexual harassment in Count IV), must be dismissed pursuant to Rules 12(b)(1), (2), (3), and/or (5) Fed. R. Civ. P. For the reasons set forth in Defendants' Alternative Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., Plaintiff's claim for sexual harassment (Count IV) must also be dismissed.

---

[52] For the reasons set forth in Defendants' Alternative Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., Plaintiff's claim for sexual harassment should also be dismissed.

Respectfully submitted,

**ADAMS AND REESE LLP**


By:   ___*/s/ S. Craig Wilcox*_____
        S. CRAIG WILCOX
        Texas Bar No.: 00797665
        Federal Bar No.: 21177
        *craig.wilcox@arlaw.com*
        LyondellBasell Tower
        1221 McKinney Street, Suite 4400
        Houston, Texas 77010
        Telephone: (713) 652-5151
        Facsimile: (713) 652-5152

***ATTORNEY FOR DEFENDANTS BIOHEALTH RX, LLC, EDWARD COKE MANN III AND COKE MANN IV***


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure, on this 28th day of April, 2025.


___*/s/ S. Craig Wilcox*_____
S. CRAIG WILCOX