## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **ELLEN SMOAK** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO.  3:25-cv-919** |
| **v.** | § | |
| | § | |
| | § | |
| **BIOHEALTH RX, LLC, EDWARD COKE** | § | **JURY DEMANDED** |
| **MANN III, and EDWARD COKE MANN** | § | |
| **IV** | § | |
| | § | |
| *Defendants.* | § | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ALTERNATIVE MOTION TO DISMISS PURSUANT TO RULE 12(B)(6), FED. R. CIV. P.

Plaintiff's claim for statutory sexual harassment and, if not dismissed in favor of arbitration, Plaintiff's claim for retaliation (Count IV) must be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P. Not only did Plaintiff fail to exhaust pre-requisite administrative remedies, by timely filing any charge(s) of discrimination as required by the TCHRA, Plaintiff is now past the 180- and 300-day deadlines for doing so. Because Plaintiff's claim for intentional interference with emotional distress arises out of the same alleged conduct which supports her sexual harassment and retaliation claims, and is not an independent tort which can be sustained under Texas law, this claim must be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Moreover, Plaintiff's claims are subject to dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P. Even if the factual allegations asserted by Plaintiff in Counts I, II, and III of the Petition are accepted as true, the claims are barred by operation of the statute of frauds. TEX. BUS. & COM. CODE ANN. § 26.01(6). Counts VI, VII, and VIII are subject to dismissal because Plaintiff has not sufficiently stated a claim upon which relief can be granted as a matter of law.

1

Accordingly, all claims in the Petition, if not dismissed in favor of arbitration (or for lack of personal jurisdiction in the case of Edward Coke "Bud" Mann, III), must be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

**Table of Contents**

I.    LEGAL STANDARD...................................................................................................... 6

II.   ARGUMENT AND AUTHORITIES.......................................................................... 7

   A.   PLAINTIFF CANNOT ENFORCE ANY ALLEGED "VERBAL" CONTRACT,
   PROMISE, OR REPRESENTATION OF AN INTEREST IN BIOHEALTH ......................... 7

   B.   PLAINTIFF FAILS TO ALLEGE SHE TIMELY FILED ANY CHARGE OF
   DISCRIMINATION RELATED TO THE ALLEGED SEXUAL HARASSMENT AND
   RETALIATION.............................................................................................................. 10

   C.   PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL
   DISTRESS (COUNT V) FAILS AS A MATTER OF LAW. ................................................ 13

   D.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE
   WITH BUSINESS RELATIONS. ..................................................................................... 16

      1.    Plaintiff fails to state a claim for tortious interference with existing contract............. 16

      2.    Plaintiff has failed to state a claim for tortious interference with prospective business
      relations.................................................................................................................... 19

   E.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TRADE SECRET
   MISAPPROPRIATION.................................................................................................... 21

   F.   LIABILITY BASED ON "ALTER EGO" OR "PIERCING THE VEIL" IS NOT A
   STAND-ALONE CLAIM, BUT RATHER AN EQUITABLE REMEDY. ............................ 24

III.    CONCLUSION........................................................................................................... 25

**Table of Authorities**

## Cases

*1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital,* 192 S.W.3d 20 (Tex.App.—Houston [14th Dist.] 2005, pet. denied) ............................................................................. 9

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472 (5th Cir. 2008) ...................... 19, 20

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................................... 7

*Caller–Times Publ'g Co. v. Triad Communications, Inc.*, 855 S.W.2d 18 (Tex. App.—Corpus Christi–Edinburg 1993, no writ) ........................................................................................ 20

*Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 578 (N.D. Tex. 2024) ................................ 18

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010) ...................... 7, 25

*Collins v. Allied Pharm. Management, Inc.*, 871 S.W.2d 929 (Tex. App.—Houston [14th Dist.] 1994, no writ) ............................................................................................................... 10

*Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814 (Tex. 2005) ..................................................... 17

*Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862 (5th Cir. 1983) ...................................... 12

*Cuadra v. Declaration Title Co., LLC*, 682 S.W.3d 628 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ......................................................................................................................... 11, 12

*Cunningham v. Daybreak Therapy, L.P.*, No. 2:06-CV-289-J, 2007 WL 2694438 ................... 16

*Dao v. Auchan Hypermarket*, 96 F.3d 787 (5th Cir. 1996) ..................................................... 12

*Dodd v. Savino*, 426 S.W.3d 275 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ................. 26

*Draker v. Schreiber,* 271 S.W.3d 318 (Tex. App.—San Antonio 2008, no pet.) ....................... 17

*Exxon Corp. v. Allsup,* 808 S.W.2d 648 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied) ............................................................................................................................ 20

*Fluor Enters., Inc. v. Conex Int'l Corp.*, 273 S.W.3d 426 (Tex. App.—Beaumont 2008, pet. denied) ............................................................................................................................ 20

*Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017) ................................................... 16

*Gaya Won, LLC*, No. H-23-3215, 2024 WL 5301787 (S.D. Tex. Dec. 23, 2024) ....................... 9

*Ghosh v. Grover*, 412 S.W.3d 749, 754 (Tex. App.—Houston 2013, no pet.) ............................ 9

*Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476 (Tex. App.—Fort Worth 1970, no writ) ...................................................................................................... 26

*Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89 (Tex. App.—El Paso 1997) ............... 18, 20, 22

*Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004) ................................ 16, 17

*Hoover Panel Sys., Inc. v. HAT Contract, Inc.*, 819 F. App'x 190 (5th Cir. 2020) ................... 23

*Johnson v. Blue Cross/Blue Shield of Texas*, 375 F. Supp. 2d 545 (N.D. Tex. 2005) ............ 15, 16

*Jordan v. Ironworkers Local 263*, No. 4:21-cv-00715-O-BP, 2022 WL 161521 (N.D. Tex. Jan. 3, 2022) .............................................................................................................................. 12

*Lewis v. Fresne,* 252 F.3d 352 (5th Cir. 2001) ........................................................................ 7

*Lopez v. AT&T Mobility Services LLC*, No. EP-24-CV-180-KC, 2025 WL 600120 (W.D. Tex. Feb. 25, 2025) ................................................................................................................. 12

*Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, pet. denied) ...... 11, 12

*Marek Brother Systems, Inc. v. Enriquez*, No. 3:19-CV-01082, 2019 WL 3322162 (N.D. Tex. July 24, 2019) ................................................................................................................... 23

*Montalvo v. Bank of America Corp.*, 864 F. Supp. 2d 567 (W.D. Tex. 2012) ............................ 9

*Off. Brands, Inc. v. Roc Nation Sports, LLC*, No. 3:15-CV-2199-B, 2015 WL 8915804 (N.D. Tex. Dec. 15, 2015)............................................................................................................ 19

*Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74 (Tex. 2000) ......................... 18

*RRK Foods Inc. v. Sree Nidhi Corp.*, No. 3:21-CV-2943-G, 2022 WL 3636676 (N.D. Tex. Aug. 23, 2022) ....................................................................................................................... 23

*Savancys Inc. v. Trendset IT Inc.*, No. 3:24-CV-0139-S, 2024 WL 4448672 (N.D. Tex. Oct. 8, 2024) .................................................................................................................. 18, 21

*Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029 (5th Cir. 2010) ............................................................................................................................. 25

*Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677 (Tex. App.—Dallas Dec. 14, 2020, no pet.) ............................................................ 23

*Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62 (Tex. 1998)........................ 15

*Steinmetz & Assocs., Inc. v. Crow*, 700 S.W.2d 276 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)).......................................................................................................................... 19

*Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470 (Tex. 1992) ..................................... 19

*T.B. by and through Bell v. Northwest Independent School District*, 980 F.3d 1047 (5th Cir. 2020) ............................................................................................................................. 16

*Tarleton State Univ. v. Rosiere*, 867 S.W.2d 948 (Tex. App.—Eastland 1993, writ dism'd by agr.) ............................................................................................................................... 22

*Taylor v. Books A Million, Inc.*, 296 F.3d 376 (5th Cir. 2002).................................................... 12

*Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021)........................................................................ 7

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019) .......................................... 7

## Statutes

TCHRA, TEX. LAB. CODE §§ 21.001, *et seq* .............................................................................. 10

TCHRA, TEX. LAB. CODE § 21.051(1) ........................................................................................ 10

TCHRA, TEX. LAB. CODE § 21.141(2) ........................................................................................ 10

TCHRA, TEX. LAB. CODE § 21.142 ............................................................................................. 10

TCHRA, TEX. LAB. CODE § 21.201 ............................................................................................. 10

TCHRA, TEX. LAB. CODE § 21.202 ............................................................................................. 10

TEX. BUS. & COM. CODE ANN. § 26.01 ....................................................................................... 7

TEX. BUS. & COM. CODE ANN. § 26.01(6) ................................................................................... 1

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002 ................................................................. 22, 23

## Rules

Rule 12(b)(6), Fed. R. Civ. P. ....................................................................................................... 1

# I.    <u>LEGAL STANDARD</u>

A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Under this standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff, but the plaintiff must allege facts that support each element of the cause of action in order to state a valid claim. *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 154–55 (5th Cir. 2010). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 153 (citing *Iqbal*, 556 U.S. at 678). The Court is not required to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citations omitted). Further, any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citing *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint; (2) documents attached to the complaint; and (3) matters of which judicial notice may be taken under Federal Rule of Civil Procedure 201. *Walker*, 252 F.3d at 735 (citations omitted). Judicial notice may be taken of matters of public record. *Id.*

6

## II.     ARGUMENT AND AUTHORITIES

### A. PLAINTIFF CANNOT ENFORCE ANY ALLEGED "VERBAL" CONTRACT, PROMISE, OR REPRESENTATION OF AN INTEREST IN BIOHEALTH.

Plaintiff alleges she was verbally promised a 5% interest (variably called "equity stake" or "ownership stake") in BioHealth or unspecified other "related ventures."[1] Plaintiff claims that in March 2024, Coke Mann "explicitly promised" that Plaintiff would receive a membership interest in BioHealth.[2] She alleges that Coke Mann showed her "financial projections showcasing billion-dollar valuations" of BioHealth.[3] Based on these statements or "promises," Plaintiff asserts an "enforceable oral contract" was established,[4] and/or, alternatively, that Coke Mann promised such an interest[5] and/or falsely misrepresented the existence of such an interest.[6]

Even if Plaintiff's allegations were true, which Defendants do not admit, but for purposes of Rule 12(b)(6) concede must be accepted by the Court, Plaintiff cannot state a claim upon which relief can be granted. The applicable statute of frauds, TEX. BUS. & COM. CODE ANN. § 26.01 , requires any "promise or agreement . . . which is not to be performed within one year from the date of making the agreement" be in writing to be enforceable. Here, Plaintiff's claim to an *ongoing and future* ownership interest in BioHealth, for which she was allegedly promised more than $50 million dollars in distributions over the span of multiple years' time, falls squarely into the statute of frauds. Therefore, the claimed "oral contract," which underlies Plaintiff's claim for breach of contract (Count I), must be dismissed. Likewise, the alleged verbal "promises" and/or "false

---

[1] *See* Doc. 6-2, Pet. at ¶¶ 17, 33, 37, 42.

[2] *Id*. at ¶ 17.

[3] *Id.*

[4] *Id.* at ¶ 33.

[5] *Id.* at ¶ 37.

[6] *Id.* at ¶ 42.

representations" that support Plaintiff's promissory estoppel claim (Count II) and fraudulent inducement claim (Count III) are also legally unenforceable.

Plaintiff's claim for alleged breach of an oral agreement to provide Plaintiff an alleged 5% equity stake in BioHealth[7] is unenforceable due to the Texas statute of frauds. *Su v. Gaya Won, LLC*, No. H-23-3215, 2024 WL 5301787, at *15 (S.D. Tex. Dec. 23, 2024) (slip copy) (finding the plaintiff's claim to a "lifetime appointment, that he would be the next generation of WKSA, and an equitable share in all WKSA's assets, including real estate" was unenforceable due to the requirement of a written agreement pursuant to the statute of frauds)*; see also Ghosh v. Grover*, 412 S.W.3d 749, 754 (Tex. App.—Houston 2013, no pet.) ("a promise by an owner or member of an LLC to transfer a tangible or intangible benefit to the LLC—by, for example, transferring cash or rendering services to the LLC—must be in writing and signed to be enforced").

Further, the statute of frauds prevents Plaintiff's claim for alleged promissory estoppel.[8] "[W]hen a plaintiff attempts to enforce an oral agreement subject to the statute of frauds, for promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and would satisfy the statute of frauds." *Montalvo v. Bank of America Corp.*, 864 F. Supp. 2d 567, 582-83 (W.D. Tex. 2012) (citing *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex.App.—Houston [14th Dist.] 2005, pet. denied)). Here, Plaintiff has not alleged a "promise to sign a written agreement" sufficient to plead around the statute of frauds' required written agreement, and therefore, she has failed to state an enforceable verbal promise.

---

[7] *Id.* at ¶ 33.

[8] *Id*. at ¶¶ 37-41.

As to Plaintiff's fraud-based claim, in the third count, "[a]pplication of the statute of frauds to a contract vitiates a fraud claim based on the same facts." *Collins v. Allied Pharm. Management, Inc.*, 871 S.W.2d 929, 936 (Tex. App.—Houston [14th Dist.] 1994, no writ) (citation omitted). "When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone." *Id.* (citation omitted) "Where a plaintiff is seeking to recover what he would have gained had the promise been performed, the gist of his cause of action is the breach of the unenforceable promise, and is barred by the statute of frauds." *Id.* (citation omitted).

Here, the gist of Plaintiff's claim for fraudulent inducement is that she was promised (or represented) to have a 5% equity interest in BioHealth, that Defendants failed to honor that alleged equity interest, and that Plaintiff is seeking the benefits from that alleged equity interest.[9] In other words, Plaintiff seeks the benefit of the alleged bargain of the oral agreement that she would receive a 5% equity stake in BioHealth. However, as a matter of law, Plaintiff has no cause of action for promissory estoppel or fraudulent inducement under these facts, because any such agreement is unenforceable under the statute of frauds due to the fact that it was a promise to be performed over the course of more than a year.

Accordingly, if not subject to mandatory arbitration pursuant to the Operating Agreement, and dismissed pursuant to Rules 12(b)(1) and (3), Fed. R. Civ. P., as requested above, Counts I, II, and III of the Petition must be dismissed with prejudice pursuant to Rule 12(b)(6), Fed. R. Civ. P. due to Plaintiff's failure to state a claim upon which relief can be granted by this Court.

---

[9] *Id.* at ¶¶ 42-45.

### B.  PLAINTIFF FAILS TO ALLEGE SHE TIMELY FILED ANY CHARGE OF DISCRIMINATION RELATED TO THE ALLEGED SEXUAL HARASSMENT AND RETALIATION.

Plaintiff purports to bring Count IV, for claimed sexual harassment and retaliation, under Texas law.[10] The applicable Texas statute is the TCHRA, TEX. LAB. CODE §§ 21.001, *et seq*. This statutory scheme, like its federal counterpart, Title VII of the Civil Rights Act of 1964, prohibits an employer[11] from "unlawful employment practice[s]," including employment decisions based on "race, color, disability, religion, sex, national origin, or age[.]" *Id.* § 21.051(1); *Id.* § 21.142. It further prohibits retaliation or discrimination, *Id.* § 21.055, and sexual harassment. *Id.* § 21.141(2).

Plaintiff's state statutory claims for sexual harassment and retaliation are time-barred, because Plaintiff failed to timely file any charge(s) of discrimination related to the alleged misconduct. Pursuant to Texas Labor Code §§ 21.201 and .202, an administrative complaint must be filed "not later than the 180th day after the date the alleged unlawful employment practice occurred," (*id.* § 21.201), and "not later than the 300th day after the date the alleged sexual harassment occurred." *Id.* § 21.202.

Texas state and federal courts have uniformly held: "A person claiming a violation of the TCHRA must first exhaust her administrative remedies prior to bringing a civil action." *Cuadra v. Declaration Title Co., LLC*, 682 S.W.3d 628, 634 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citations omitted); *see also Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, pet. denied) ("The exhaustion of administrative remedies is a jurisdictional prerequisite to file suit for unlawful employment practices.") (internal citation omitted)). "Exhaustion occurs

---

[10] *Id.* at ¶ 49 ("Mann IV's conduct created a hostile work environment and violated Texas law prohibiting workplace sexual harassment and retaliation.").

[11] Defined as a person who employs one or more employees. *See* TEX. LAB. CODE § 21.141.

when the plaintiff files a timely charge with the [appropriate administrative agency] and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 379 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788–89 (5th Cir. 1996)); *Lopez v. AT&T Mobility Services LLC*, No. EP-24-CV-180-KC, 2025 WL 600120, *3 (W.D. Tex. Feb. 25, 2025).

"The purposes underlying the administrative-complaint requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the administrative agency and the employer an opportunity to resolve the dispute." *Cuadra*, 682 S.W.3d at 634 (quoting *Lopez v. Tex. State Univ.*, 368 S.W.3d at 701 (internal citation omitted)). In *Lopez v. AT&T Mobility Services*, 2025 WL 600120, a sister district court in this state ruled: "absent waiver or certain equitable considerations, courts must dismiss unexhausted Title VII and TCHRA claims." *Id.* at *3 (citing *Jordan v. Ironworkers Local 263*, No. 4:21-cv-00715-O-BP, 2022 WL 161521, at *4 (N.D. Tex. Jan. 3, 2022) (citing *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983)), *adopted*, 2022 WL 160241 (N.D. Tex. Jan. 18, 2022)).

In the present suit, Plaintiff's claim for sexual harassment against Coke Mann arises from alleged misconduct beginning as early as 2020[12] and as late as April 2024.[13] Plaintiff alleged three specific instances of sexual harassment in the Petition, none of which is supported by specifically-identified dates. These include: (1) alleged misconduct in April 2024, during a business trip to Houston;[14] (2) alleged misconduct involving the creation and sending of explicit AI images, which occurred in "[m]id-2023."[15] and (3) "around this same period," Coke Mann allegedly sent Plaintiff

---

[12] Doc. 6-2, Pet. at ¶ 16.

[13] *Id.* at ¶¶ 20-21.

[14] *Id.* at ¶ 18.

[15] *Id.* at ¶ 20.

a photograph "depicting" explicit sexual activity.[16] Coke Mann denies this alleged misconduct in its entirety.

Yet, before filing the present lawsuit, Plaintiff failed to file any charge(s) of discrimination for alleged sexual harassment or retaliation as required by the TCHRA. Not only did Plaintiff fail to file any charge of discrimination, as statutorily required, her deadline to do so has now expired.

300 days from the last possible date in April (April 30, 2024),[17] was February 24, 2025. No charge of discrimination was filed as to that alleged instance of alleged sexual harassment. Likewise, 300 days from July 1, 2023, which is the closest to "mid-2023,"[18] as alleged in the Complaint was April 26, 2024.[19] No charge of discrimination as to these instances of alleged sexual harassment has been filed by Plaintiff either.

For the same reasons, Plaintiff's retaliation claim (also asserted in Count IV) is based on alleged misconduct occurring as early as April 2024[20] and as late as October 2024.[21] Under the TCHRA, Plaintiff was required to file a charge of discrimination arising from this alleged unlawful employment practice within 180 days, and she failed to do so.

180 days from the last date in April (April 30, 2024) was October 27, 2024. No charge of discrimination was filed as to that alleged instance of retaliation. In addition, if the Court assumes that the communication referenced in Paragraph 27 of Plaintiff's Petition was on the last day in

---

[16] *Id.* at ¶ 21.

[17] *Id.* at ¶ 18.

[18] *Id.* at ¶¶ 20, 21.

[19] Even if "mid-2023" is a typographical error, and should have been mid-2024, 300 days from July 1, 2024 was April 27, 2025. At a minimum, if Plaintiff can substantiate that these alleged instances of sexual harassment occurred after July 1, 2024, then the claim based on these later instances of alleged harassment must still be dismissed without prejudice for further review by the appropriate administrative agency.

[20] *Id.* at ¶¶ 18, 19.

[21] *Id.* at ¶ 27.

October (October 31, 2024), 180 days was April 29, 2025. Yet, no administrative charge of discrimination was filed as to that alleged instance of retaliation either. Accordingly, Plaintiff's retaliation claim, based on allegations of retaliation occurring between April and October 2024, must be dismissed with prejudice. To the extent Plaintiff can demonstrate that these instances of retaliation occurred after April 30, 2024 and/or October 31, 2024, such that they are not yet time-barred, her claims must still be dismissed without prejudice for further administrative review.

Due to Plaintiff's failure to timely file any charge(s) of discrimination related to the alleged sexual harassment and retaliation, Count IV of the Petition must be dismissed.

### C. PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT V) FAILS AS A MATTER OF LAW.

Plaintiff's fifth cause of action is for intentional infliction of emotional distress ("IIED"). She asserts Coke Mann's alleged misconduct, "including generating AI-created explicit images of Plaintiff and sending them to her," was "extreme, outrageous, and beyond the bounds of decency."[22] She asserts Coke Mann's "actions were intentional and reckless, designed to cause Plaintiff severe emotional distress."[23] As a consequence, she claims entitlement to damages for alleged "emotional distress, including anxiety, humiliation, and reputational damage."[24] However, this claim must be dismissed because IIED is only available where there is no other remedy at law. Here, the gravamen of Plaintiff's IIED claim is the same as her claim for sexual harassment.

To state a claim under Texas law for IIED, Plaintiff must allege: "(1) the defendant acted intentionally or recklessly, (2) the conduct was 'extreme and outrageous,' (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the resulting emotional distress was

---

[22] Doc. 6-2, Pet. at ¶ 51.

[23] *Id.* at ¶ 52.

[24] *Id.* at ¶ 53.

severe." *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). *Here,* Plaintiff's claim is barred by operation of law. "[A] claim for [IIED] cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Standard Fruit*, 985 S.W.2d at 68.

The Texas Supreme Court, and federal courts enforcing Texas law, regularly affirm that "[IIED] is a "gap-filler" tort that should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Standard Fruit*, 985 S.W.2d at 68 (citations omitted); *see also Johnson v. Blue Cross/Blue Shield of Texas*, 375 F. Supp. 2d 545 (N.D. Tex. 2005). "[T]he tort's clear purpose is to supplement existing forms of recovery by providing a cause of action for egregious conduct 'that its more established neighbors in tort doctrine would technically fence out.'" *Id.* (quotation and citations omitted).

Plaintiff attempts in vain to arbitrarily segregate her allegations regarding Coke Mann's purported misconduct among her claims for sexual harassment and IIED. On the one hand, she asserts his "unwelcome sexual advances" in the form of "booking a shared hotel room and gifting her a sex toy during a business trip in April 2024,"[25] are relevant only to her claim for sexual harassment. On the other hand, she claims his acts of generating and sending "AI-created explicit images of Plaintiff" is relevant only to her claim of IIED.[26] Yet, such an indiscriminate distinction defies common sense. Both sets of alleged wrongful conduct, if true, (which Coke Mann strongly denies) would theoretically support a claim for sexual harassment. Plaintiff's logical gymnastics to back door these allegations in support of a separately-stated claim for IIED should be rejected.

---

[25] Doc. 6-2, Pet. at ¶ 46

[26] *Id.* at ¶ 51.

The Fifth Circuit has ruled that such overly formulaic or illogically technical reading of complaints is not the standard. *See T.B. by and through Bell v. Northwest Independent School District*, 980 F.3d 1047, 1053 at n.4 (5th Cir. 2020) (ruling that a court must "analyze the plaintiff's 'suit' or 'complaint'") (citing *Fry v. Napoleon Community Schools,* 137 S. Ct. 743, 752 (2017) ("[A] court should look to the substance, or gravamen, of the plaintiff's complaint."); *id.* at 755 ("What matters is the crux—or, in legal speak, the gravamen—of the plaintiff's complaint....").").

"If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an [IIED] claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Hoffmann-La Roche*, 144 S.W.3d at 448. In *Cunningham v. Daybreak Therapy, L.P.*, this Court ruled: "There is no gap to fill where allegations supporting [IIED] 'stem from the same conduct that supports [Plaintiff's] sexual harassment and retaliation claims.'" No. 2:06-CV-289-J, 2007 WL 2694438, at *5 (quotation omitted). In *Johnson v. Blue Cross/Blue Shield of Texas*, the Court applied Texas law to dismiss a plaintiff's IIED claim which, "incorporates and realleges the very same facts that support his . . . discrimination claims." *Id.* at 549. "Consequently, the 'gravamen' of Plaintiff's Complaint is 'the very type of wrong the statutory remedy' provided by Title VII and the ADEA were meant to provide." *Id.* at 550.

In *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), the Texas Supreme Court criticized a plaintiff's "circumvent[ion], by more than thirty-fold, the legislative determination of the maximum amount that a defendant should pay for this type of conduct," by proceeding on claims of both sexual harassment and IIED, based on the same underlying wrongful conduct. *Id.* at 447. "[W]e never intended that [IIED] be used to evade legislatively-imposed limitations on statutory claims or to supplant existing common law remedies. Properly cabined,

the tort simply has no application when the "actor 'intends to invade some other legally protected interest,' even if emotional distress results." *Id.* (quotation and citations omitted). Moreover, Plaintiff's cause of action of IIED is barred, regardless whether she succeeds on her sex harassment claim and regardless whether her sex harassment claim is time-barred. *See Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816 (Tex. 2005) (holding Plaintiff could not assert an IIED claim where her complaints were covered by other statutory remedies, even though those statutory remedies were barred); *Hoffman-LaRoche, Inc.*, 144 S.W.3d at 447-448; *Draker v. Schreiber,* 271 S.W.3d 318, 323 (Tex. App.—San Antonio 2008, no pet.) (holding an IIED claim unavailable when the complaint primarily alleged facts regarding defamation and libel per se, and the defamation and libel claims were previously dismissed on summary judgment).

This Court should likewise determine that because the gravamen of Plaintiff's Petition is another claim—sexual harassment, prohibited by federal and state statutes—Plaintiff's claim of IIED is not available, and must be dismissed with prejudice. The "gap filling" role of a claim for IIED is not appropriate because there is no gap to fill. Plaintiff's allegations are governed by the TCHRA. That she failed to timely file a charge of discrimination and cannot maintain such a statutory claim now does not provide her with a tort remedy. Rather, both Counts IV and V should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

### D. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS.

#### 1. Plaintiff fails to state a claim for tortious interference with existing contract.

In Count VI of the Petition, Plaintiff attempts to state a claim for tortious interference with business relations. It is unclear whether Plaintiff's claim falls under the theory of tortious interference with *existing contracts* or the separate and distinct theory of tortious interference with

*prospective business relations.* Under either theory, Plaintiff's Petition is deficient, and this count

fails as a matter of law and should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

To the extent Plaintiff is attempting to allege tortious interference with an existing contract,

the Petition fails. "To state a claim for tortious interference with an existing contract, a plaintiff

must show '(1) an existing contract subject to interference, (2) a willful and intentional interference

with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damage

or loss." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 578 (N.D. Tex. 2024) (quoting

*Prudential Ins. Co. of Am. v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

The Petition is deficient in multiple respects to the extent that it seeks to state a claim for

intentional interference with existing contract. First, it fails to allege the existence of any specific

enforceable contract between Plaintiff and any third party that Defendants allegedly interfered

with.[27] *See Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 123 (Tex. App.—El Paso 1997) ("The

first requirement" … "is essentially a qualification that there must be a 'contract subject to

interference.'"). To adequately state a claim the "[p]laintiff must allege 'that some obligatory

provision of a contract [was] breached.'" *Savancys Inc. v. Trendset IT Inc.*, No. 3:24-CV-0139-S,

2024 WL 4448672, at *2 (N.D. Tex. Oct. 8, 2024) (slip copy) (quotation citations omitted).

In *Savancys Inc.*, this Court recently dismissed a plaintiff's claim for tortious interference

with an existing contract on the basis that the plaintiff's allegations regarding the existing contract

and its breach were "sparse." 2024 WL 4448672, at *2. "Plaintiff does not allege whether and how

[the third party] breached the [alleged] Agreements. Therefore, Plaintiff has not plausibly pleaded

a claim for tortious interference with an existing contract." *Id.* Similarly, here, Plaintiff merely

---

[27] Doc. 6-2, Pet. at ¶¶ 54-56 (alleging only "existing business relationships and ongoing negotiations" and "opportunities.")

alleges she had "*existing* business relationships" that were interfered with, without specifically alleging the existence of any binding or enforceable contract(s) that were in fact breached due to the Defendants' alleged wrongdoing.[28]

Second, Plaintiff's Petition fails to allege that Defendants' conduct was intended to procure the breach(es) of Plaintiff's agreement(s) with any third party. There is no allegation in Plaintiff's Petition sufficient to establish that any Defendant had any knowledge or reason to know of Plaintiff's alleged business contract(s) or ongoing negotiations with any third party. Plaintiff merely asserts that "Defendants interfered with these relationships."[29] Plaintiff does not even allege that any third-party contract was actually *breached.*

Under Texas law, "[t]o show tortious interference, a plaintiff is not required to prove intent to injure, but rather 'only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" *Off. Brands, Inc. v. Roc Nation Sports, LLC*, No. 3:15-CV-2199-B, 2015 WL 8915804, at *3 (N.D. Tex. Dec. 15, 2015) (quoting *Amigo Broad., LP v. Spanish Broad. Sys., Inc.,* 521 F.3d 472, 490 (5th Cir. 2008) (quoting *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992))). "[T]he interfering party must have 'actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship.'" *Id.* (quoting *Steinmetz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 277–78 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)).

"To interfere with the contract, a defendant's actions must 'make the performance of the contract more difficult' or prevent performance." *Id.* (quoting *Fluor Enters., Inc. v. Conex Int'l*

---

[28] *Id.* at ¶ 54.

[29] *Id.* at ¶ 55.

*Corp.*, 273 S.W.3d 426, 442-43 (Tex. App.—Beaumont 2008, pet. denied). "Importantly, the defendant must intend to cause a breach of the contract." *Id.* (citing *Fluor Enters., Inc.*, 273 S.W.3d at 443). None of these components of the second element of a claim for intentional interference with existing contract are alleged in Plaintiff's Petition.

Third, the Petition fails to plead proximate cause. "To establish proximate cause, a party must show that 'the defendant took an active part in persuading a party to a contract to breach it.'" *Amigo Broad., LP*, 521 F.3d at 493) (quotation omitted). Because this element is missing from the Petition, the claim is deficient and must be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

### 2. Plaintiff has failed to state a claim for tortious interference with prospective business relations.

To the extent Plaintiff's sixth count is for tortious interference with prospective business relations, Plaintiff has also failed to state a claim upon which relief can be granted. Texas law requires a plaintiff allege: "(1) the reasonable probability that a contractual relationship would have been entered; (2) an intentional, malicious intervention with the formation of that relationship; (3) without privilege or justification; (4) resulting in actual damage or loss." *Hill*, 964 S.W.2d at 124 (citation omitted). "It is not necessary to prove that the contract would have certainly been made but for the interference; it must be reasonably probable, considering all of the facts and circumstances attendant to the transaction." *Id.* (citing *Exxon Corp. v. Allsup,* 808 S.W.2d 648, 659 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied)). "More than mere negotiations must have taken place." *Id.* (citing, in part, *Caller–Times Publ'g Co. v. Triad Communications, Inc.,* 855 S.W.2d 18, 24 (Tex. App.—Corpus Christi–Edinburg 1993, no writ)).

As to the first element, Plaintiff's Petition lacks any allegation regarding the specificity of the third-party prospective contract, business dealings, or opportunity, nor does it contain any

allegation to establish that such dealings were reasonably certain to have occurred absent the alleged wrongdoing.[30] In *Savancys*, this Court dismissed a plaintiff's claim for tortious interference with prospective business relationship where the plaintiff's complaint "lack[ed] specificity" regarding the purported third-party agreements. 2024 WL 4448672, at *3. "Plaintiff has not pointed to any reasonably probable continuing business relations with which Defendants interfered." *Id.* Rather, the Court found that the plaintiff only "plead[ed] in conclusory fashion that it had 'business opportunities'" that the defendants "interfered with." *Id.*

Here, Plaintiff also only pleads in conclusory fashion that she had "existing business relationships" and non-specified "ongoing negotiations."[31] She fails to plead the required element of a reasonable probability of future business relationships with any third party. Plaintiff's Petition falls even further short of the allegations in *Savancys*, in which the plaintiff did plead specific future business with an *identifiable* third-party. *See* 2024 WL 4448672, at *3. This Plaintiff only alleges she had "existing business relationships and ongoing negotiations with [unspecified] investors, branding experts, and strategic partners."[32]

Second, nothing in the Petition alleges Defendants intended to interfere with Plaintiff's prospective business dealings or opportunities, or even that Defendants were aware of such dealings or opportunities. *See Off. Brands, Inc.*, 2015 WL 8915804, at *3 ("To show tortious interference, a plaintiff is … required to prove … 'that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'") (quotation omitted).

---

[30] Doc. 6-2, Pet. at ¶¶ 54-56.

[31] *Id.* at ¶ 54.

[32] Doc. 6-2, Pet. at ¶ 54.

Third, Plaintiff has also failed to allege that Defendants' interfered with any of Plaintiff's business relations or negotiations "without privilege or justification," a required element of a claim for tortious interference with prospective business dealings. *Hill*, 964 S.W.2d at 124. "The plaintiff has the burden of proving lack of justification or excuse in a tortious interference with prospective business relationship cause of action." *Id.* (citing *Tarleton State Univ. v. Rosiere,* 867 S.W.2d 948, 952 (Tex. App.—Eastland 1993, writ dism'd by agr.)).

Fundamentally, Plaintiff alleges Defendants "misrepresented Plaintiff's role" (as a non-equity owner) and "exclude[ed] her from business operations,"[33] which she attempts to assert is adequate for "tortious interference" with third-party relationships and/or negotiations, even ones for which Defendants presumably had no knowledge. These are essentially the same allegations as her breach of contract, promissory estoppel, and fraudulent inducement claims, but within the context of interference with unspecified third party relationships and opportunities. However, Plaintiff has failed to allege all of the necessary elements of a claim for tortious interference with any existing contract and she has failed to establish that Defendants had actual knowledge of any third-party contract or business dealing that was reasonably probable to turn into a contractual relationship in which Defendants tortiously interfered. Count VI should therefore be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

### E. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TRADE SECRET MISAPPROPRIATION.

In Count VII, Plaintiff attempts to assert a claim for trade secret misappropriation under the Texas Uniform Trade Secrets Act, 134A.006, *et seq.* ("TUTSA").[34] Plaintiff alleges she

---

[33] *Id.* at ¶ 55
[34] Doc. 6-2, Pet. at ¶¶ 58-61.

"contributed unique branding, marketing strategies, and operational knowledge" to BioHealth, "including the concept and name 'Nuology.'"[35] She asserts, in merely conclusory fashion, "Defendants misappropriated these trade secrets by using them without Plaintiff's consent and excluding her from the benefits of her intellectual property"[36] which, she contends "violated the TUTSA."[37] These allegations are insufficient to state a claim upon which relief can be granted and this claim, too, must be dismissed.

In *RRK Foods Inc. v. Sree Nidhi Corp.*, No. 3:21-CV-2943-G, 2022 WL 3636676, at *9 (N.D. Tex. Aug. 23, 2022), this Court recognized that "to establish trade secret misappropriation under Texas law, a plaintiff must show: (1) a trade secret; (2) Defendants acquired the trade secret by breach of a confidential relationship or other improper means; and (3) Defendants used the trade secret without authorization.'" (citing *Marek Brother Systems, Inc. v. Enriquez*, No. 3:19-CV-01082, 2019 WL 3322162, at *3 (N.D. Tex. July 24, 2019) (Lindsay, J.)) (citations omitted). *See also Snowhite Textile & Furnishings, Inc. v. Innvision Hosp., Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, at *4 (Tex. App.—Dallas Dec. 14, 2020, no pet.) (stating the elements of a claim and citing TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002); *Hoover Panel Sys., Inc. v. HAT Contract, Inc.*, 819 F. App'x 190, 198 (5th Cir. 2020) (applying Texas law). In *RRK Foods*, this Court agreed with the defendant that "in order to sufficiently plead a trade secrets claim . . . [the] [p]laintiff is required to plead facts indicating it took reasonable measures to maintain the secrecy of the information[.]" 2022 WL 3636676 at *10. The Court found the plaintiff failed to plead any facts that demonstrated it took any measures to maintain secrecy, whether reasonable or not, and dismissed the trade secret claim pursuant to Rule 12(b)(6). *Id.*

---

[35] *Id.* at ¶ 58.

[36] *Id.* at ¶ 59.

[37] *Id.* at ¶ 60.

First, Plaintiff has failed to allege the existence of any specific trade secret. A "trade secret" is defined under the TUTSA as information and/or documents, in almost any form, over which "the owner . . . has taken reasonable measures under the circumstances to keep . . . secret" and "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6)(A)-(B).

Plaintiff's Complaint only alleges, in conclusory fashion that Plaintiff contributed "unique branding, marketing strategies, and operational knowledge . . . , including the concept and name 'Nuology.'"[38] She failed to allege that she or anyone else undertook "reasonable measures under the circumstances to keep [such] information secret" and also failed to allege that "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information," as required by the TUTSA. It is unclear whether Plaintiff *herself* is even the alleged owner of the purported trade secrets, as she does not allege that in the Petition.[39] Rather, she merely alleges that she "*contributed* branding, marketing strategies, and operational knowledge"[40] to BioHealth, not that she owned such information, whether or not she alleged it as a valid trade secret.

Second, Plaintiff has not alleged that Defendants "acquired the [alleged] trade secret[s] by breach of confidential relationship or other improper means," as is required to state a claim of trade secret misappropriation under the TUTSA. *Snowhite Textile & Furnishings, Inc.*, 2020 WL

---

[38] Doc. 6-2, Pet. at ¶ 58.

[39] Doc. 6-2, Pet. at ¶¶ 58-62.

[40] *Id.* at ¶ 58 (emphasis added).

7332677, at *4. Rather, she states in merely conclusory fashion that Defendants misappropriated the alleged trade secrets without her authorization. The Court is not required to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *City of Clinton, Ark.*, 632 F.3d at 153 (citing *Iqbal*, 556 U.S. at 678).

Third, Plaintiff has not sufficiently alleged Defendants used the purported trade secret(s) without Plaintiff's authorization. Rather, Plaintiff appears to acknowledge that she "contributed [i.e. voluntarily gave] [the] "unique branding, marketing strategies, and operational knowledge to BioHealth . . . , including the concept and name 'Nuology.'"[41] She does not allege any facts as to any agreement controlling the scope or extent of use by BioHealth that BioHealth breached. Rather, she merely alleges Defendants' "used" these trade secrets "without Plaintiff's consent" by "excluding her from the benefits of her intellectual property."[42] Such threadbare conclusions are not entitled to acceptance by the Court.

Plaintiff's claim for trade secret misappropriation under TUTSA is legally deficient and fails to state a claim upon which relief can be granted. It should accordingly be dismissed.

### F.  LIABILITY BASED ON "ALTER EGO" OR "PIERCING THE VEIL" IS NOT A STAND-ALONE CLAIM, BUT RATHER AN EQUITABLE REMEDY.

In Count VIII of Plaintiff's Petition she attempts to state a claim for alter ego and/or piercing the veil liability. These are equitable remedies available under Texas state law, but they are not stand-alone claims. *See Shandong Yinguang Chemical Industries Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010) ("Piercing the corporate veil is not a separate cause of action, but a method to impose personal liability on shareholders and corporate officers who would

---

[41] *Id.* at ¶ 58.

[42] Doc. 6-2, Pet. at ¶ 59.

24

otherwise be shielded from liability for corporate debts.") (citing *Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476, 480 (Tex. App.—Fort Worth 1970, no writ)); *Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Alter ego, or piercing the corporate veil, is not an independent cause of action, but is instead a means of imposing liability for an underlying cause of action."). Therefore, to the extent all the other counts in Plaintiff's Petition fail as a matter of law or lack of jurisdiction, so too must Count VIII fail.

### III.    CONCLUSION

To the extent one or more of Plaintiff's claims in the Petition are not dismissed in favor of arbitration (or in the case of Bud Mann for lack of personal jurisdiction), for the reasons set forth in Defendants' separately filed Motion to Dismiss pursuant to Rules 12(b)(1), (2), (3) and/or (5), Fed. R. Civ. P. (Doc. 11), the Petition must still be dismissed because Plaintiff has failed to state a claim upon which relief can be granted. All counts in Plaintiff's Petition should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Respectfully submitted,

**ADAMS AND REESE LLP**

By: ___*/s/ S. Craig Wilcox*_____
S. CRAIG WILCOX
Texas Bar No.: 00797665
Federal Bar No.: 21177
*craig.wilcox@arlaw.com*
LyondellBasell Tower
1221 McKinney Street, Suite 4400
Houston, Texas 77010
Telephone: (713) 652-5151
Facsimile: (713) 652-5152

***ATTORNEY FOR DEFENDANTS BIOHEALTH RX, LLC, EDWARD COKE MANN III AND COKE MANN IV***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure, on this 28th day of April, 2025.


_____*/s/ S. Craig Wilcox*_____
S. CRAIG WILCOX